THE THOMAS CUSACK COMPANY, Appellee, *vs.* THE CITY OF CHICAGO *et al.* Appellants.

*Opinion filed December 16, 1914—Rehearing denied April 9, 1915.*

1. EVIDENCE—*what admissible upon question of reasonableness of a bill-board ordinance.* Where the reasonableness of an ordinance regulating the erection of bill-boards in residence districts is under investigation as a question of fact, and it is shown that fires have started from combustible material lodged against such boards, evidence that the residence territory of the city is not so well protected by fire-extinguishing apparatus as the business district is competent.

2. SAME—*proof that bill-boards afford protection for disorderly persons is competent.* As bearing upon the reasonableness of an ordinance regulating bill-boards in residence districts, proof that such bill-boards afford protection to disorderly and law-breaking persons, and that residence districts are not afforded as full police protection as other districts of the city, is competent.

3. MUNICIPAL CORPORATIONS—*an ordinance requiring frontage consents for erection of bill-boards in residence districts is valid.* An ordinance requiring the consent of a majority of the owners of property, according to frontage, on both sides of the street in the block where it is proposed to erect bill-boards, where one-half the buildings on both sides of the street are used exclusively for residence purposes, is within the power of a city and is not so un-

reasonable as to render it invalid. (*City of Chicago* v. *Gunning System*, 214 Ill. 628, and *Haller Sign Works* v. *Physical Culture School*, 249 *id.* 436, distinguished.)

DUNN and COOKE, JJ., dissenting.

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

JOHN W. BECKWITH, Corporation Counsel, (WILLIAM H. SEXTON, and LORING R. HOOVER, of counsel,) for appellants.

JOHN S. HUMMER, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

The Thomas Cusack Company, a corporation, filed· a bill in equity in the superior court of Cook county against the city of Chicago, the mayor of the city, and other officials, to restrain the enforcement of an ordinance regulating the erection and maintenance of bill-boards in residence blocks in said city. The bill alleges that the complainant is engaged in the business of outdoor advertising in Chicago and elsewhere, and that it maintains bill-boards on private property in residence blocks without having complied with an ordinance of the city of Chicago passed and in force December 5, 1910. The section of the ordinance the validity of which is involved is as follows:

"707. *Frontage consents required.*—It shall be unlawful for any person, firm or corporation to erect or construct any·bill-board or sign-board in any block on any public street in which one-half of the buildings on both sides of the street are used exclusively for residence purposes, without first obtaining the consent, in writing, of the owners or duly authorized agents of said owners owning a majority of the frontage of the property, on both sides of the street, in the block in which such bill-board or sign-board is to be erected, constructed or located. Such written

consents shall be filed with the commissioner of buildings before a permit shall be issued for the erection, construction or location of such bill-board or sign-board."

The bill alleges that a large number of bill-boards have been erected since the passage of said ordinance without complying with its provisions in regard to obtaining the consent of the majority of the property owners fronting on both sides of the street in the blocks in which such bill-boards have been erected and maintained; that the occupation of lots with these bill-boards is under leases made with the owners of the lots, and that the complainant has made contracts with its customers for the maintenance of said boards and the display of advertisements thereon. The bill alleges that the section of the ordinance above set out is invalid for the reason that it is discriminatory and unconstitutional, in that it deprives property owners of their property without due process of law, in violation of the constitutions of the United States and of the State of Illinois. The bill also alleges that the bill-boards erected in violation of said ordinance do not in any way· interfere with the public health, safety, welfare or comfort, and alleges that the city of Chicago has no power to pass said ordinance, and that if said city has power to pass any ordinance on the subject of bill-boards, the one in question is void for unreasonableness. The prayer is for a perpetual injunction against the city and its officials enjoining them from the enforcement of said ordinance.

The defendants below answered the bill, in which the alleged invalidity is denied. The answer alleges that the ordinance was regularly passed by the city council pursuant to expressed legislative authority, and that it is a proper exercise of the police power of the city of Chicago and the State of Illinois. The answer sets up that bill-boards are dangerous to the public health, safety, morals, welfare and comfort in that they afford protection to disorderly persons, who conceal themselves behind them; that the space behind

bill-boards is used in such manner as to create nuisances by reason of the shelter and protection afforded by said bill-boards; that the maintenance of such bill-boards causes the accumulation of inflammable material, thereby increasing the danger of fires. The answer denies that the ordinance is invalid for any reason, and particularly that it is not invalid because discriminatory, oppressive or unreasonable.

The cause was heard upon evidence produced in open court, and a decree was entered in accordance with the prayer of the bill, perpetually enjoining the enforcement of the ordinance. The defendants below have prosecuted an appeal to this court.

The sole question involved for our consideration is the validity of section 707 of the municipal code of Chicago, which is quoted above. The contentions in support of the decree are, first, that the municipality had no power to pass the ordinance in question; and second, conceding that the city has the power to pass proper regulatory ordinances in regard to the erection and maintenance of bill-boards, the ordinance here involved is void because it is not a proper exercise of such power, in that it is oppressive and unreasonable.

This court held in *City of Chicago* v. *Gunning System,* 214 Ill. 628, that under paragraph 66 of section 1 of article 5 of the Cities and Villages act, relating to the police power, and under paragraph 75 of said section, relating to nuisances, a city has power to enact and enforce reasonable regulations respecting bill-boards within the corporate limits, whether upon public streets or private property. On page 639 this court summed up its view upon this question, as follows: "We think it clear that either under paragraph 66 or 75, *supra,* full power and authority are conferred upon cities, towns and villages to regulate the construction and use of bill-boards within their corporate limits, provided the regulation is not unreasonable. Moreover, paragraph 78 of section 1, article 5, confers upon cities and vil-

lages the right 'to do all acts, make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease.' No argument need be advanced that the structures described in the bill before us may become a menace to the safety of the public, and hence the subject of control and regulation. They may be erected in such a manner as to be dangerous to the public by falling or being blown down, or constructed of such materials and dimensions as to be dangerous, or placed upon buildings or other structures in such a manner as to endanger the life and limb of the citizen, or erected within the fire limits in such proximity to buildings as to increase the danger of loss by fire, or so as to obstruct the view of railroad crossings and thus endanger life by accident, or have printed or displayed upon them obscene characters tending to demoralize and injure the public morals. If boards are erected in violation of any of these public rights or interests, and of others which might be mentioned, there is ample power within the statute to regulate them, provided such regulations are reasonably necessary for the protection of the public health, morals or safety. Nor will the mere fact that such structures are placed upon private property, and not on the public streets, protect those owning or using them against such reasonable regulations."

While the particular ordinance that was involved in the *Gunning System case* was held invalid, the decision did not rest on the want of power in the municipality to pass reasonable ordinances upon that subject. To remove any doubt as to the existence of the power, the legislature in 1912 passed an act providing "that the city council in cities and the president and board of trustees in villages and incorporated towns shall have the power to license street advertising by means of bill-boards, sign-boards and signs, and to regulate the character and control the location of such bill-boards, sign-boards and signs upon vacant property and upon buildings." (Hurd's Stat. 1913, chap. 24, par. 696.)

Whether this statute enlarges the powers which existed, as declared by this court in the *Gunning System case,* or not, it is not necessary to inquire. It is at least a clear legislative declaration which unmistakably manifests an intention that the subject of bill-boards and bill-board advertising shall be subject to municipal regulation.

The existence of the power to legislate upon the subject of bill-boards being established, the next inquiry is whether the ordinance in question is a reasonable exercise of such power. Upon the question of the reasonableness of the ordinance much evidence was introduced by the appellants · showing the detrimental results that have followed the erection and maintenance of bill-boards in the residence districts. It was shown by the testimony that fires had been started from the accumulation of combustible material that had lodged against the base of bill-boards. As bearing upon this question and as affording a justification for requiring frontage consents in residence districts, evidence was offered to show that the residence territory of the city is not so well protected with fire extinguishing apparatus as is the business district. This evidence was objected to and the court sustained the objection. In this the court erred. When the reasonableness of an ordinance is under investigation as a question of fact, any pertinent matter which may reasonably be supposed to have influenced the enactment of the ordinance would seem to be proper evidence. If, as a matter of fact, the erection of bill-boards would increase the hazards of fire in residence districts, that fact, together with any other attending circumstance which would show that fires in residential districts would be more disastrous to life and property and that their extinguishment would be attended with greater difficulties than in other districts, would have a direct bearing upon the reasonableness of the requirement for frontage consent. *Welch* v. *Swasey,* 214 U. S. 91.

Appellants also offered to show that bill-boards offered a protection to disorderly and law-breaking persons and that residence districts are not afforded' as full police protection as other districts in the city of Chicago, and the court refused to hear this evidence, and in this the court also erred. It did, however, appear from the testimony that women and children are on the streets, unaccompanied, in larger numbers and more frequently in residence districts than in other places, and that the crimes against women and children the most frequent are indecent exposure and offenses against the person. It is shown by the testimony that the two elements contributing to crime in cities are, in the order of their importance, first, absence of police; and second, darkness. It was shown by appellee that in some instances lights were maintained upon the front surface of its bill-boards, but in answer to this it was shown that the space behind the boards remained dark, and that the rear was even darker than it would have been if there were no lights at all. It was shown that nuisances were permitted to exist in the rear of surface bill-boards, and physicians testified that deposits found behind bill-boards breed disease germs, which may be carried and scattered in the dust by the wind and by flies and other insects. It was shown that dissolute and immoral practices were carried on under the cover and shield furnished by these bill-boards. The answer made to all this is, that any other structure or building which would afford a like screen from view would produce similar results, and herein is found the basis for the contention that the ordinance is discriminatory; but we are of the opinion that the surface bill-board is unlike, in several particulars, structures that are erected for other purposes, such as fences, barns and other out-buildings that may be used in connection with a residence. This argument was made in the case of *Gunning Advertising Co.* v. *City of St. Louis,* 239 Mo. 99, and we quote the answer of that court to this argument, as follows: "While that is

possible yet it is not probable. Nor does the erection and maintenance of a building or a fence along the lines of private property bordering upon public streets have the natural tendency to create any such nuisance as those mentioned. Buildings and fences are erected for the purpose of enclosing grounds and excluding therefrom strangers and trespassers, and common experience teaches us that they are effectual for that purpose, which is inconsistent with the idea that they promote and harbor nuisances, as billboards do, which rarely, if ever, enclose the grounds upon which they stand. That is not the purpose of their erection. Generally they are built along only one end or side of a lot or plot of ground, but occasionally upon two sides, and in rare instances upon three, but I have never seen or heard of a lot being enclosed upon all four sides by billboards. The end of the lot fronting upon an alley is almost invariably left open, for the simple reason that the alley is not conspicuous in the public eye, and for that reason it would be useless to display advertisements at such places where they could not be seen."

Under the state of facts shown by the evidence here, we cannot agree with the court below that the ordinance in question is void for unreasonableness. Before the court will be justified in declaring the ordinance invalid the unreasonableness should be made to clearly appear. It should be manifest that the discretion reposed in municipal authorities has been abused in the exercise of the power conferred. (*Chicago and Alton Railroad Co.* v. *City of Carlinville,* 200 Ill. 314, and cases there cited.) The case of *City of Chicago* v. *Gunning System, supra,* is clearly distinguishable from the case at bar. The ordinance there held unreasonable and void was general in its terms and prescribed restrictive conditions in regard to the erection and maintenance of bill-boards, and made no exception whether the bill-boards were in a thickly settled part of the city or in an open block or field. Mr. Justice Wilkin said

on this point in the *Gunning System case:* "It must be apparent to all reasonable minds that provisions which are necessary·in one of such cases would be wholly unnecessary and unreasonable in others, and that a provision might be a reasonable police regulation in the one case and in one locality which would be wholly unreasonable under other circumstances in another locality. This ordinance is, however, without qualification or limitation applicable to signs and bill-boards alike in all portions of the great city of Chicago, applicable alike to every portion of its extended territory. We do not hold that this ordinance is so unreasonable as to be void if it were limited to particular districts of the city." In *Haller Sign Works* v. *Physical Culture School,* 249 Ill. 436, we held a statute which prohibited the erection of any character of signs for advertising purposes within five hundred feet of any public park or boulevard, illegal and void, for the reason that it did not tend to promote the safety, health, comfort or general welfare of the public but was manifestly passed ·solely from æsthetic considerations. The ordinance here under consideration is not open to the objections that were apparent upon the face of the statute in the *Haller Sign Works case,* and the evidence in the record clearly distinguishes this case from the *Gunning System case.*

The ordinance is not unreasonable or oppressive because it requires the consent of a majority of the owners of property, within certain limits, on both sides of the street where such bill-boards are to be erected. In respect to occupations or structures the location and maintenance of which are subject to regulation under the police power of the municipality, a requirement of frontage consents of property owners, within reasonable limits, is a proper mode of exercising the power of regulation vested in the municipality. Ordinances of this general character have been upheld in regard to livery stables in *City of Chicago* v. *Stratton,* 162 Ill. 494, in regard to dram-shops in *Swift* v. *People,* 162

id. 534, and in respect to garages in the late case of *People v. Ericsson,* 263 id. 368.

It follows from the views herein expressed that the court erred in entering a final decree perpetually enjoining the enforcement of section 707 of the municipal code of Chicago.

The decree of the superior court is reversed and the cause remanded to that court, with directions to dismiss the bill for want of equity.

> *Reversed and remanded, with directions.*

DUNN and COOKE, JJ., dissenting.