WALTER B. KRYCH, d/b/a W.B.K. Real Estate, Plaintiff-Appellant, *v.* THE VILLAGE OF BURR RIDGE *et al.*, Defendants-Appellees.

Second District   No. 82—160

Opinion filed December 29, 1982.—Rehearing denied February 3, 1983.

Irving B. Campbell and Joseph M. Carrobotta, both of Stitt, Moore & Lennon, of Rolling Meadows, for appellant.

Klein, Thorpe & Jenkins, Ltd., of Chicago, for appellees.

JUSTICE VAN DEUSEN delivered the opinion of the court:

Walter B. Krych, plaintiff and counterdefendant, appeals from a judgment entered in the circuit court of Du Page County on July 14, 1981, in favor of the village of Burr Ridge and Gus Zissimopoulos, Building Commissioner for the village of Burr Ridge, defendants and counterplaintiffs.

Krych owns a vacant lot in the village of Burr Ridge which he leased to Braemoor Associates, in 1971. Shortly thereafter, Braemoor

applied for a permit from the village to erect a sign on the vacant lot. There is no evidence in the record that a permit actually issued, but there is evidence that the village clerk accepted $144 from Braemoor as tendered payment for a sign permit. In a letter dated July 6, 1981, however, the building commissioner for the village expressly denied Braemoor's request for a sign permit.

Subsequently, Braemoor erected a ground sign on the lot. The sign had a surface area of 240 square feet, was approximately 18 feet, 10 inches above street level, and had a plywood surface facing.

Until 1978, the sign was maintained by Braemoor and advertised the sale of offsite Braemoor properties. In 1978, Braemoor informed Krych that it no longer had a use for the sign. In May 1978, Krych repainted the sign and changed the message on the sign. The new message advertised his offsite real estate office and the sale of real estate including the vacant lot upon which the sign was located. Krych failed to obtain either a permit from or the approval of the village when making the changes.

In early 1979, the village building commissioner called Krych and informed him that the sign violated Burr Ridge Ordinance 151. On April 14, 1979, Krych received a citation in which the village asserted that he violated section 12 of Ordinance 151 by altering an existing sign and refusing to remove the nonconforming sign within the specified time. On July 26, 1979, Krych filed a two-count complaint in the circuit court. In count I, he asked the court to declare unconstitutional sections 12, 20, 21 and 27 of Burr Ridge Ordinance 151 and enjoin the village from enforcing any part of the ordinance against him. Count II requested that a writ of *mandamus* issue ordering the defendants to issue a sign permit to him.

In January 1980, the defendants filed a counterclaim against Krych alleging that he violated section 4L of the Burr Ridge Ordinance 151 by altering the sign without a permit to do so; that the sign violated section 20 of the ordinance by having combustible plywood surfacing; and that the sign violated section 21 of the ordinance by having a surface area of 240 square feet and by being 18 feet, 10 inches above street level. The village sought enforcement of these ordinance provisions.

Following a bench trial, the trial court entered an order on July 14, 1981, finding that Krych violated the ordinance in question by altering the sign without obtaining a permit; that Krych violated section 12 of the ordinance which prohibits off-premises advertising; that section 12 is constitutional and that Krych's sign violates the size, height and construction limitations of the ordinance.

Section 12 of the village of Burr Ridge Ordinance 151 states:

"Any sign which no longer advertises a bona fide business conducted, or a product sold on the premises where said sign is located, shall be taken down and removed by the owner, agent, or person having the beneficial use of the building or structure upon which such sign may be found, within ten days after written notification from the building commissioner, and, upon failure to comply with such notice within the time specified in such order, the building commissioner is hereby authorized to cause removal of such sign and any expense attendant thereto shall be paid by the owner of the building or structure to which such sign is attached."

At the trial court level, Krych argued that this section is unconstitutional in that it allows onsite commercial messages but bans offsite commercial message.

■ On appeal, Krych does not attempt to argue that the village ordinance unconstitutionally restricts offsite commercial speech. Krych now asserts for the first time that the ordinance is unconstitutional because it permits some onsite commercial signs, but prohibits all noncommercial signs. This, he now urges, constitutes a violation of his rights of communication under the first amendment of the Federal Constitution. In this matter, the parties filed a written stipulation, just prior to trial, advising the court of the nature of the issues between the parties. Neither in the stipulation nor elsewhere, including his post-trial motion, did Krych raise the issue of whether the ordinance in question violated the first amendment of the Federal Constitution in that it prohibits noncommercial speech or communication.

"It has frequently been held that the theory upon which a case is tried in the lower court cannot be changed on review, and that an issue not presented to or considered by the trial court cannot be raised for the first time on review." (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147.) This rule is applicable to constitutional issues. (*City of Chicago v. Shell Oil Co.* (1963), 29 Ill. 2d 136, 139.) Where a constitutional argument is neither pleaded nor proved, this court need not consider it further. (*Ambroiggio v. Board of Education* (1981), 101 Ill. App. 3d 187, 190-91.) In this case, it appears that Krych had neither pleaded nor proved that the ordinance unconstitutionally restricts noncommercial speech. Because Krych also failed to raise the issue in the trial court, he cannot now assert it on appeal.

Krych also contends that Ordinance 151 is invalid because it delegates to the building commissioner the power to refuse a sign permit if he is not satisfied that a proposed sign advertises "a bona fide busi-

ness conducted or a product sold on the premises where said sign is located." Krych has neither pleaded nor proved any facts in support of this theory. Because this theory was never raised in the trial court, it too has not been preserved for review. See *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147.

■ As his next issue, Krych asserts that Burr Ridge has not pleaded or proved that the size limitation of 120 square feet for permissible signs represents a substantial governmental interest, directly advances that interest, and goes no further than is necessary to accomplish that objective. Section 21 of the ordinance establishes size limitations for ground signs to be erected in Burr Ridge. It provides that no ground signs shall be greater than 16 feet above street level or ground level and that no ground sign shall have a surface area exceeding 120 square feet.

In *Metromedia, Inc. v. City of San Diego* (1981), 453 U.S. 490, 517, 69 L. Ed. 2d 800, 820-21, 101 S. Ct. 2882, 2897, the United States Supreme Court recognized that a city has a legitimate interest in regulating the noncommunicative aspects of a medium of expression. Illinois has long recognized that municipalities have the power and authority to reasonably regulate the construction of billboards. (*Thomas Cusack Co. v. City of Chicago* (1914), 267 Ill. 344, 347, *aff'd* (1917), 242 U.S. 526, 61 L. Ed. 472, 37 S. Ct. 190; *City of Chicago v. Gunning System* (1905), 214 Ill. 628, 639.) In *Cusack* the court stated:

"No argument need be advanced that the structures described in the bill before us may become a menace to the safety of the public, and hence the subject of control and regulation. They may be erected in such a manner as to be dangerous to the public by falling or being blown down, or constructed of such materials and dimensions as to be dangerous, or placed upon buildings or other structures in such a manner as to endanger the life and limb of the citizen, or erected within the fire limits in such proximity to buildings as to increase the danger of loss by fire, or so as to obstruct the view of railroad crossings and thus endanger life by accident ***." (267 Ill. 344, 348.)

Burr Ridge also has express statutory authority to regulate and control signs located on vacant property within the village boundaries. Ill. Rev. Stat. 1981, ch. 24, par. 11—80—15.

■ Moreover, numerous cases have sustained ordinances which reasonably limit the size and construction of signs. (*People ex rel. Herman Armanetti, Inc. v. City of Chicago* (1953), 415 Ill. 165 (validating an ordinance which prohibited signs exceeding 75 square feet from projecting over public property); *McGuire v. Purcell* (1955), 7 Ill.

App. 2d 407 (upholding an ordinance prohibiting signs larger than one square foot in a residential neighborhood); *Paulus v. Smith* (1966), 70 Ill. App. 2d 97 (upholding an ordinance prohibiting signs within 400 feet of center line of expressway); *Rent-a-Sign v. City of Rockford* (1980), 85 Ill. App. 3d 453 (upholding an ordinance regulating the use of lights on mobile signs); *City of Champaign v. Kroger Co.* (1980), 88 Ill. App. 3d 498 (upholding an ordinance which limited free standing signs to a height of 20 feet and an area of 50 square feet).) In these cases, the ordinances were upheld because they reasonably furthered a legitimate governmental interest in the health and safety of the public, as well as the aesthetic concerns of the government.

In those cases, however, the sign owners did not assert, as Krych attempts to do here, that the size limitations are an infringement on his first amendment rights under the Federal Constitution, as well as an invalid exercise of the village's police power. In *Consolidated Edison Co. v. Public Service Com.* (1980), 447 U.S. 530, 65 L. Ed. 2d 319, 100 S. Ct. 2326, the Supreme Court invalidated a regulation which prohibited the inclusion in monthly electric bills of inserts discussing controversial issues of public policy. While the court invalidated the regulation, it also recognized the validity of reasonable time, place or manner regulations that serve a significant governmental interest and leave ample alternative channels for communication. (447 U.S. 530, 535, 65 L. Ed. 2d 319, 326, 100 S. Ct. 2326, 2332; see also *Linmark Associates, Inc. v. Township of Willingboro* (1977), 431 U.S. 85, 93, 52 L. Ed. 2d 155, 162, 97 S. Ct. 1614, 1618.) The essence of time, place or manner regulation lies in the recognition that various methods of speech, regardless of their content, may frustrate legitimate governmental goals; therefore, a restriction that regulates the time, place or manner of speech may be imposed so long as it is reasonable. *Consolidated Edison Co. v. Public Service Com.* (1980), 447 U.S. 530, 536, 65 L. Ed. 2d 319, 327, 100 S. Ct. 2326, 2332.

Because the section of the ordinance which limits the size of signs is "content neutral" and regulates only the manner in which a message is conveyed, the section appears to be a time, place or manner regulation of speech. (*Erznoznik v. City of Jacksonville* (1975), 422 U.S. 205, 209, 45 L. Ed. 2d 125, 130, 95 S. Ct. 2268, 2272.) These size and height limitations seem to further a legitimate governmental interest. (*Thomas Cusack Co. v. City of Chicago* (1914), 267 Ill. 344, 347.) Therefore, the limitations will be valid as long as they are reasonable. (*Consolidated Edison Co. v. Public Service Com.* (1980), 447 U.S. 530, 536, 65 L. Ed. 2d 319, 327, 100 S. Ct. 2326, 2332.) In light of the previously cited Illinois cases, the size limitations of the Burr

Ridge ordinance appear to be reasonable and in furtherance of the legitimate governmental interest in the health, safety and welfare of the public. The trial court's implicit finding that such is true in this case is not against the manifest weight of the evidence.

We have also carefully considered the final contention of Krych that the village is estopped from enforcing the ordinance against him and find it to be without merit. Compare *O'Laughlin v. City of Chicago* (1976), 65 Ill. 2d 183, with *Cities Service Oil Co. v. City of Des Plaines* (1961), 21 Ill. 2d 157.

The judgment of the trial court is affirmed.

Affirmed.

SEIDENFELD, P.J., and LINDBERG, J., concur.