No. 2--08--0300      Filed:  2-25-09

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JEFF SHERWOOD, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 06--MR--474 |
| | ) | |
| THE CITY OF AURORA, | ) | |
| | ) | |
| Defendant-Appellee | ) | Honorable |
| | ) | Michael J. Colwell, |
| (Michael Leon, Plaintiff). | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the opinion of the court:

On October 30, 2006, the plaintiff, Jeff Sherwood, an Aurora police officer, filed a complaint seeking a declaratory judgment that the investigation conducted by the defendant, the City of Aurora, into his alleged misconduct violated the requirements of the Uniform Peace Officers' Disciplinary Act (the Act) (50 ILCS 725/1 et seq. (West 2006)).  The parties filed cross-motions for summary judgment.  On March 13, 2008, the trial court granted the defendant's motion and denied the plaintiff's motion.  The plaintiff appeals from that order.  We affirm.

On July 20, 2006, Aurora Chief of Police William Powell received a phone call from the Danville chief of police.  The Danville police chief advised Chief Powell that in the early morning hours on July 18, 2006, the plaintiff had been intoxicated, involved in a fight with other individuals at a motel, and extremely uncooperative with the Danville police officers who were called to

investigate the incident. The Danville police chief faxed to Chief Powell a copy of Danville police department incident report No. 06--8729. The report contained further details of the incident at the motel.

Specifically, the report indicated that certain Danville police officers responded to a battery call at a local motel. When they arrived, the plaintiff indicated that he had been battered by five other males in a motel room. Four of the subjects were known and one was unknown. All of the other subjects involved in the altercation indicated that the plaintiff was in the room drinking and began causing problems. One subject requested that the plaintiff leave the room but the plaintiff refused. The plaintiff then pushed the subject, the subject pushed him back, and the plaintiff then punched the subject in the nose. The subject told the officers that, when he began attempting to push the plaintiff out of the room, he could have hit the plaintiff in the face in the process. The report indicated that the plaintiff had swelling around his right eye and a small laceration above the eye. Another subject indicated that, as he was attempting to restrain the plaintiff, the plaintiff hit him in the back of the head. A third subject indicated that his knee had been injured as he was trying to break up the fight. The report also indicated that the plaintiff was very uncooperative with the Danville police officers when they arrived. The plaintiff appeared to be very intoxicated and had to be asked several times to provide his identification before he finally complied.

Based on the information provided, Chief Powell initiated an internal investigation of the plaintiff. Lieutenant Paul B. Nelson was assigned to perform the investigation. As part of the Aurora police department's internal investigation procedures, Lt. Nelson completed a "Performance Complaint Form," dated July 25, 2006. On that form, Lt. Nelson was listed as the complainant. The form also included a "Synopsis of Incident," which was completed by Lt. Nelson. Lt. Nelson

essentially summarized the information contained in the Danville police report. The form also included an attestation, signed by Lt. Nelson and notarized, indicating:

"I understand that this statement of complaint will be submitted to the Aurora Police Department, Office of Professional Standards, and will serve as a basis for an internal investigation. I declare and affirm that the facts contained herein are complete, accurate, and true to the best of my knowledge and belief. Furthermore, I agree to fully cooperate with any investigation and agree to appear at any civil or criminal proceeding if necessary. I also understand that any intentional false statements herein attested to by me, may be cause for criminal and/or civil proceedings against me."

On October 2, 2006, Lt. Nelson sent the plaintiff a notification of formal interrogation. The notification indicated the nature of the investigation, the date and time that the plaintiff was required to be present for an interrogation, and the plaintiff's rights regarding the interrogation. On October 7, 2006, Lt. Nelson conducted a formal interrogation of the plaintiff. On October 13, 2006, Lt. Nelson submitted his final report. In that report, Lt. Nelson concluded that the plaintiff violated Aurora police department General Orders 4.3.1(A), requiring obedience to laws, and 4.3.2(C), governing conduct and behavior. Ultimately, on December 15, 2006, the plaintiff was suspended for three days without pay.

On October 30, 2006, the plaintiff filed a complaint for declaratory judgment. In his complaint, the plaintiff noted that section 3.8(b) of the Act (50 ILCS 725/3.8(b) (West 2006)) stated that "[a]nyone filing a complaint against a sworn peace officer must have the complaint supported by a sworn affidavit." The plaintiff alleged that on October 2, 2006, he was notified, pursuant to the Act, that an investigation was being conducted based upon a complaint by Lt. Nelson. The plaintiff

argued that, although Lt. Nelson filed an affidavit in support of his complaint, the affidavit was insufficient because Lt. Nelson had no personal knowledge of the allegations contained in the complaint. The plaintiff requested that the court make "binding declarations of rights concerning the construction of 50 ILCS 725/3.8(b) [(West 2006)] to require the City of Aurora and its agent to investigate and discipline peace officers in accordance with [the Act]."

On October 12, 2007, the defendant filed a motion for summary judgment. In that motion, the defendant argued that the Act was designed to provide a series of procedural protections to police officers when they were being investigated for alleged misconduct and that it was not a limitation on a police department's ability to investigate officer misconduct. The defendant argued that section 3.8(b) of the Act did not indicate that a formal investigation of police officer misconduct can commence only upon the filing of a sworn complaint by a person with firsthand knowledge of the alleged officer misconduct. The defendant argued that, because there was no requirement in the Act that an internal investigation can be initiated only when there has been a sworn complaint filed against an officer, it was irrelevant whether Lt. Nelson's complaint form complied with section 3.8(b). The defendant further argued that section 3.8(b) was intended to apply to a third party such that, if that party wished to file a complaint against a police officer, he or she had to do so under the penalty of perjury. Alternatively, the defendant argued that, even if the Act could be interpreted as requiring a sworn complaint under section 3.8(b) as a condition precedent to an internal investigation, Lt. Nelson's complaint complied with section 3.8(b) because the matters he set forth were based on his own knowledge gleaned from the Danville police report.

On October 15, 2007, the plaintiff filed a cross-motion for summary judgment. In that motion, the plaintiff argued that Lt. Nelson's sworn complaint did not comply with section 3.8(b) of

the Act. The plaintiff argued that an affidavit must be based upon the personal knowledge of the affiant such that the affiant could competently testify at trial to the contents of the affidavit. The plaintiff argued that Lt. Nelson's affidavit was invalid because it was based on the Danville police report, and he therefore had no personal knowledge of the allegations contained in the complaint. The plaintiff argued that without personal knowledge, Lt. Nelson could not competently testify at trial to the contents of the affidavit. Accordingly, the plaintiff argued that he was entitled to summary judgment on his complaint.

On February 26, 2008, the trial court issued a written letter opinion. The trial court found that the Act did not contain any language that explicitly required a complaint in order to initiate an investigation of an officer. Additionally, the trial court found:

"It is apparent that the investigation of Officer Sherwood's misconduct could have properly been triggered by the phone call from the Chief of Police in Danville alone. No formal complaint was required to begin an informal inquiry into his conduct. Even if, for argument's sake, the Complaint were deficient for the reasons stated by the plaintiff, such deficiencies would not be fatal. Taking the Complaint out of the equation, the City of Aurora had information of officer misconduct which was provided to them by the Chief of Police in Danville. There is nothing in the statute that prevents the City from conducting an investigation based solely on this information."

Accordingly, on March 13, 2008, the trial court entered an order denying the plaintiff's motion for summary judgment and granting the defendant's motion for summary judgment. Thereafter, the plaintiff filed a timely notice of appeal.

On appeal, the plaintiff argues that, pursuant to the Act, an investigating agency must have a valid affidavit in support of a complaint prior to interrogating an officer as part of a formal investigation into alleged officer misconduct. The plaintiff argues that the affidavit in support of the complaint filed by Lt. Nelson was not valid because Lt. Nelson did not have firsthand knowledge of the misconduct alleged in the complaint. The plaintiff argues that the Danville police officers involved in his alleged misconduct should have been required to execute sworn affidavits before he was subjected to a formal interrogation. In response, the defendant argues that the Act does not require a sworn complaint to be filed prior to a formal interrogation of a police officer. Alternatively, the defendant argues that, even if the Act did require a sworn complaint, Lt. Nelson's complaint satisfied the statute.

To determine whether the Act requires a sworn complaint by someone with firsthand knowledge of the alleged misconduct before an officer can be subjected to an interrogation, we begin with the language of the Act. The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature. DeLuna v. Burciaga, 223 Ill. 2d 49, 59 (2006). To determine the legislature's intent, a court first looks to the statute's language, which is to be given its plain and ordinary meaning. Harrisonville Telephone Co. v. Illinois Commerce Comm'n, 212 Ill. 2d 237, 247 (2004). When the language of the statute is clear, it must be applied as written without resort to aids or tools of interpretation. DeLuna, 223 Ill. 2d at 59. Where a statute is capable of more than one reasonable interpretation, the statute will be deemed ambiguous. General Motors Corp. v. State of Illinois Motor Vehicle Review Board, 224 Ill. 2d 1, 13 (2007). In that event, the court may consider extrinsic aids to construction, such as legislative history. Millineum Maintenance Management, Inc.

v. County of Lake, 384 Ill. App. 3d 638, 648 (2008). The construction of a statute is a question of law, which we review de novo. DeLuna, 223 Ill. 2d at 59.

The relevant portions of the Act are as follows:

"§ 2. For the purposes of this Act, unless clearly required otherwise, the terms defined in this Section have the meaning ascribed herein:

* * *

(c) 'Formal investigation' means the process of investigation ordered by a commanding officer during which the questioning of an officer is intended to gather evidence of misconduct which may be the basis for filing charges seeking his or her removal, discharge or suspension in excess of 3 days.

(d) 'Interrogation' means the questioning of an officer pursuant to the formal investigation procedures of the respective State agency or local governmental unit in connection with an alleged violation of such agency's or unit's rules which may be the basis for filing charges seeking his or her suspension, removal, or discharge.

* * *

§ 3.8. Admissions; counsel; verified complaint.

(a) No officer shall be interrogated without first being advised in writing that admissions made in the course of the interrogation may be used as evidence of misconduct or as the basis for charges seeking suspension, removal, or discharge; and without first being advised in writing that he or she has the right to counsel of his or her choosing who may be present to advise him or her at any stage of the interrogation.

(b) Anyone filing a complaint against a sworn peace officer must have the complaint supported by a sworn affidavit." 50 ILCS 725/2(c), (d), 3.8(a), (b) (West 2006).

The Act "requires that, if officers are to be disciplined, certain procedures must be followed." Cain v. Larson, 879 F.2d 1424, 1427 (7th Cir. 1989). Pursuant to the Act, when a police department initiates a formal investigation of an officer, any interrogation must proceed in accordance with the Act. 50 ILCS 725/3 (West 2006). Sections 3.1 through 3.11 set forth the procedures that must be followed during the interrogation. 50 ILCS 725/3.1 through 3.11 (West 2006). For example, the interrogation must be conducted at a reasonable time of day (50 ILCS 725/3.3 (West 2006)); the subject matter must be disclosed (50 ILCS 725/3.2 (West 2006)); and the officer may have an attorney or union representative available to advise him during the interrogation (50 ILCS 725/3.9 (West 2006)). Accordingly, the Act is designed to provide a series of procedural protections to police officers when they are interrogated as part of formal investigations into officer misconduct.

In the present case, the issue on appeal can be resolved by looking at the plain language of the Act. The plain language of the Act indicates that "[a]nyone filing a complaint against a sworn peace officer must have the complaint supported by a sworn affidavit." 50 ILCS 725/3.8(b) (West 2006). There are two types of affidavits, those based on personal knowledge and those based on information and belief. E.g., Carbonara v. North Palos Fire Protection District, 192 Ill. App. 3d 275, 277 (1989) (indicating that election contest petitions and civil complaints may be verified by affidavit based upon information and belief); cf. 210 Ill. 2d R. 191 (stating that affidavits in support of motions for summary judgment and certain other motions must be based on personal knowledge). The Act's "sworn affidavit" is not limited to one kind or the other, and we cannot read into a statute any limitation that it does not express. See O'Keefe v. Illinois State Police Merit Board, 313 Ill. App.

3d 817, 828 (2000). Thus, the plain language of the Act demonstrates that either type of affidavit is sufficient.

Contrary to the plaintiff's argument, this construction accords with the purpose of an affidavit in this context. In arguing that section 3.8(b) requires that the affidavit be based on personal knowledge only, the plaintiff cites to Hoover v. Crippen, 151 Ill. App. 3d 864, 868 (1987). In Hoover, the defendant questioned the validity of an affidavit in support of a motion for a preliminary injunction. Hoover, 151 Ill. App. 3d at 868. In finding that the affidavit must be based on personal knowledge such that the affiant could competently testify at trial to the contents of the affidavit, the Hoover court relied on Mount Prospect State Bank v. Forestry Recycling Sawmill, 93 Ill. App. 3d 448, 459 (1980). Hoover, 151 Ill. App. 3d at 868. Mount Prospect specifically dealt with a Supreme Court Rule 191 (210 Ill. 2d R. 191) affidavit in support of a motion for summary judgment. Mount Prospect, 93 Ill. App. 3d at 459. Rule 191 requires that affidavits submitted in connection with motions for summary judgment (735 ILCS 5/2--1005 (West 2006)), motions for involuntary dismissal (735 ILCS 5/2--619 (West 2006)), and motions to contest jurisdiction over the person (735 ILCS 5/2--301 (West 2006)) be made on the personal knowledge of the affiants. See 210 Ill. 2d R. 191. An affidavit submitted on a motion for summary judgment must meet the same requirements as competent testimony because it serves as a substitute for testimony at trial. Robidoux v. Oliphant, 201 Ill. 2d 324, 335 (2002). However, the present case does not involve a motion for a preliminary injunction or any of the motions addressed by Rule 191.

An affidavit under section 3.8(b) of the Act does not serve as a substitute for testimony at trial, as does an affidavit in the summary judgment context. Instead, the only reasonable purpose of the affidavit requirement under section 3.8(b) is to discourage complainants from making false or

malicious allegations against police officers. See, e.g., People v. Cuevas, 371 Ill. App. 3d 192, 199 (2007) (Gilleran Johnson, J., specially concurring) (observing that the statutory affidavit requirement of a petition for an order of protection is intended to "thwart false or malicious allegations by the petitioner"). Moreover, "where [a] statute requires a 'sworn complaint,' but does not prescribe the form of verification, we assume that such a complaint should be verified by affidavit in the same manner as complaints in civil cases may be verified, and 'the affidavit should be in such form as to subject the party making it to a prosecution for perjury in case the matter sworn proves to be false.' " Rutledge v. Department of Registration & Education, 77 Ill. App. 2d 103, 114 (1966), quoting Farrell v. Heiberg, 262 Ill. 407, 410 (1914). Section 2--605 of the Code of Civil Procedure (735 ILCS 5/2--605 (West 2006)) provides that verified pleadings may be stated upon information and belief.

The affidavit requirement of section 3.8(b) is similar to the affidavit requirement necessary to obtain a search warrant. A complaint and supporting affidavit for the issuance of a search warrant are not required to show beyond a reasonable doubt that the warrant should be issued; rather, they need establish only probable cause. People v. Moser, 356 Ill. App. 3d 900, 908 (2005). "A showing of probable cause means that the facts and circumstances within the knowledge of the affiant are sufficient to warrant a person of reasonable caution to believe that an offense has occurred and that evidence of it is at the place to be searched." Moser, 356 Ill. App. 3d at 908. A police officer's complaint and affidavit made for the purpose of securing a search warrant need not be made on personal knowledge only. People v. Bauer, 102 Ill. App. 3d 31, 35 (1981). However, the complaint should state with sufficient definiteness the facts on which the information and belief are based so

that, if they are false, a perjury charge may be assigned thereon. People v. Moran, 58 Ill. App. 3d 258, 259 (1978).

Accordingly, an affidavit in support of a complaint for a search warrant can be based on information and belief if it provides probable cause to further investigate possible criminal activity and if it subjects the complainant to a prosecution for perjury should the allegations prove to be false. Similarly, an affidavit in support of a complaint alleging officer misconduct can be based on information and belief as long as it provides sufficient grounds to initiate an investigation and subjects the affiant to a prosecution for perjury should the allegations turn out to be false. In both instances, the affidavits are not intended to substitute for testimony at trial. Rather, the intent is that they provide sufficiently reliable grounds to investigate alleged misconduct. Consequently, we hold that the affidavit requirement of section 3.8(b) allows either an affidavit based on personal knowledge or an affidavit based on information and belief. Lt. Nelson's sworn affidavit in support of his complaint, based upon information and belief gleaned from the Danville police report, satisfied the affidavit requirement of section 3.8(b) of the Act. Accordingly, we affirm the trial court's judgment. See Bell Leasing Brokerage, LLC v. Roger Auto Service, Inc., 372 Ill. App. 3d 461, 469 (2007) (we may affirm the trial court's judgment on any basis appearing in the record regardless of the trial court's reasoning).

In so ruling, we note that the plaintiff's argument necessarily implies that an officer interrogation cannot be conducted in the absence of a complaint. The defendant argues that the Act does not require that a complaint be filed prior to the interrogation of an officer. However, we need not reach the issue of whether, pursuant to the Act, a complaint is necessary prior to conducting an officer interrogation. A determination of that issue would be nothing more than advisory as it is

beyond the facts of this case.  Here, a complaint was filed and it was supported by an affidavit that we determined to be valid.  Whether an interrogation would be proper absent a complaint and its supporting affidavit is a determination for a different case.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

ZENOFF, P.J., and McLAREN, J., concur.